**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
CHRIS BASNETT, Individually and on Behalf
of All Others Similarly Situated,

                                        Plaintiff,

    -against-                                   **No. 13 Civ. 00214 (HB)**

LONGWEI PETROLEUM INVESTMENT
HOLDING LTD., CAI YONGJUN, MICHAEL
TOUPS, and JAMES CRANE,

                                        Defendants.

---------------------------------------------------------------x
---------------------------------------------------------------x
JUN MA, Individually and on Behalf of All
Others Similarly Situated,

                                        Plaintiff,

    -against-                                   **No. 13 Civ. 00229 (HB)**

LONGWEI PETROLEUM INVESTMENT
HOLDING LIMITED, YOUNGJUN CAI,
JAMES CRANE, AND MICHAEL TOUPS,

                                        Defendants.
---------------------------------------------------------------x
(*caption continued on subsequent page*)

**REPLY OF THE LONGWEI INVESTOR GROUP IN FURTHER SUPPORT
OF ITS MOTION FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF LEAD COUNSEL
<u>AND IN OPPOSITION TO COMPETING MOTIONS</u>**

```
-------------------------------------------------------------x
CHARLIE MUNIZ, Individually and on Behalf
of All Others Similarly Situated,

                           Plaintiff,

       -against-                                  No. 13 Civ. 00278 (HB)

LONGWEI PETROLEUM INVESTMENT
HOLDING LTD., YONGJUN CAI, MICHAEL
TOUPS, and JAMES CRANE,

                           Defendants.
-------------------------------------------------------------x
-------------------------------------------------------------x
PAUL HOWARD, Individually and on Behalf
of All Others Similarly Situated,

                           Plaintiff,

       -against-                                  No. 13 Civ. 00422 (HB)

LONGWEI PETROLEUM INVESTMENT
HOLDING LTD., CAI YONGJUN, MICHAEL
TOUPS, and JAMES CRANE,

                           Defendants.
-------------------------------------------------------------x
```

Excalibur Special Opportunities, L.P. ("Excalibur"), Greg Lagermeier ("Lagermeier") and Todd Okimoto ("Okimoto") (collectively the "Longwei Investor Group") respectfully submit this reply memorandum in further support of their motion for consolidation of related actions, appointment as Lead Plaintiff, approval of their selection of lead counsel and in opposition to the competing motions, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

Four competing motions seeking appointment as Lead Plaintiff were timely filed in this action. Of those movants, the Longwei Investor Group's purported losses were the largest of any

competing movant.  Significantly, the losses of Longwei Investor Group member Excalibur, a sophisticated institutional investor, are the largest of any individual competing movant. Recognizing that their financial losses were not as large as those of the Longwei Investor Group, Movants Kolakowski and Sappal; Movant Kozma and Movants Mously and Dandy withdrew their motions for appointment as Lead Plaintiff and appointment of lead counsel.  *See Basnett v. Longwei Petroleum Investment Holding Limited*, No. 13-cv-0214-HB (S.D.N.Y.). ECF Nos. 31, 32 and 33 (all docket references are to *Basnett*, the first-filed action).  The only holdout is the LPH Investor Group, which claims a larger financial interest in this action by applying a specious interpretation of the Last-In-First-Out ("LIFO") methodology for inventory auditing, which contravenes basic accounting principles, as well as common sense.

The critical factor which the Court must determine in selecting a Lead Plaintiff is which movant has "the largest financial interest in the relief sought by the class."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) ("In appointing a Lead Plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status.").

Applying an unfounded loss analysis, the LPH Investor Group erroneously maintains that instead of a loss of $501,180, the Longwei Investor Group member Excalibur actually has a *gain* of $781,075 under LIFO.  While plaintiffs are all in agreement that "Courts in this circuit and nationwide have overwhelmingly adopted the LIFO methodology" as the best method for calculating losses for lead plaintiff purposes,[1] the LPH Investor Group's calculations contravene the accepted accounting interpretation of the LIFO methodology.

---

[1] *See, e.g.,* Memorandum of Law in Further Support of the LPH Investor Group's Motion for Appointment as Lead Plaintiff and in Opposition to All Competing Motions at p. 6 ("LPH Memo") ECF No. 35, citing *Bo Young Cha v. Kinross Gold Corp.*, 12 Civ. 1203 (PAE), 2012 U.S. Dist. LEXIS 79288 at *9-10 (S.D.N.Y. May 31, 2012).

Specifically, the LPH Investor Group *incorrectly* calculated the Longwei Investor Group's LIFO losses by failing to match sales to purchases <u>immediately</u> preceding such sales, as required under LIFO.  *See* Exhibit A, Declaration of Ken Kotz at ¶ 5.  Under LIFO, "a sale is matched to the most recent purchase of shares (occurring prior to the sale)." *Id.*[2] Moreover, proceeds from sales of pre-class holdings are removed from the calculation of financial interest in a Lead Plaintiff analysis. *Id.* at ¶ 23.  Here, contrary to the accepted accounting interpretation of LIFO, the LPH Investor Group failed to match Excalibur's first 502,273 sales of Longwei stock during the Class Period to *any* purchases, instead treating the entire proceeds thereof as profits, and subtracting such profits from Excalibur's purported losses. *Id.* at ¶ 22.  However, when applying LIFO, these "shares sold must match to purchases that occurred prior to the sales, and the only purchases occurring prior to the sales were Excalibur's pre-Class holdings." *Id.* at ¶ 23.  Thus, applying LIFO correctly, such sales should have been excluded from Excalibur's Class Period loss analysis. *Id.*  The result of that proper exclusion yields a loss of $501,180 for Excalibur. *Id.* at ¶ 25.

Indeed, the legal authority cited by the LPH Investor Group acknowledges that sales from pre-Class Period holdings are not included in the financial loss calculations. *See* LPH Memo at 6-8, citing *City of Monroe Employees' Ret. Sys. V. Hartford Fin. Srvs. Grp., Inc.*, 269 F.R.D. 291 (S.D.N.Y. 2010) ("Because sales matched with pre-class period purchases are not included in the calculation of class period losses, any gains or losses from those most recent sales would not be included in the total loss.").

As the following table illustrates, when applying LIFO ***correctly***, the Longwei Investor Group's purported LIFO losses are greater than any of the purported losses of any other

---

[2] *Accord SEC v. Commonwealth Chemical Sec., Inc.,* 1976 U.S. Dist. LEXIS 12998, at *3 (S.D.N.Y. Sept. 29, 1976) (defining LIFO as "the proceeds of a sale transaction [that] are matched against the price paid in the purchase transaction *just preceding* the sale") (italics added).

3

movants; Excalibur has the greatest losses of any other individual movant; and the Longwei Investor Group has more retained shares than any other competing movant.

| Movant(s) | Shares Purchased | Amount Expended | Retained Shares at end of Class Period | LIFO Loss |
|---|---|---|---|---|
| Excalibur | 400,000 | $895,000 | 250,000 | $501,180.00 |
| Okimoto | 68,700 | $206,405 | 68,700 | $163,508.72 |
| Lagermeier | 80,000 | $146,729 | 80,000 | $108,329.43 |
| **Longwei Investor Group Total** | **548,700** | **$1,248,134** | **398,700** | **$773,018.15** |
| Love | 104,800 | $210,520 | 27,262 | $125,411.75 |
| Lupis | 618,327 | $1,244,185 | 0 | $430,397.25 |
| Wilson | 120,800 | $292,618 | 100 | $214,324.94 |
| **LPH Investor Group Total** | **843,927** | **$1,747,323** | **27,362** | **$770,154.94** |
| **Pritt, Piasta** | **126,120** | **$220,127** | **38,000** | **$94,751.13** |
| **Tylutki** | **7,500** | **$16,775** | **7,500** | **$12,092.00** |

Grasping at even thinner straws, the LPH Investor Group argues that Excalibur is subject to unique defenses because well over a year ago, in a wholly unrelated matter, it retained Gary Varnavides ("Varnavides") of Sichenzia Ross Friedman Ference LLP ("Sichenzia Ross") who apparently represents Defendant Longwei Petroleum Holdings, Inc. ("Longwei") here. The LPH Investor group fails to proffer any reason why that representation, which lasted no more than four months and terminated more than a year ago, should in any way subject Excalibur to a conflict of interest or unique defense, or would otherwise vitiate Excalibur's determination to seek an excellent recovery for itself and the Class. Indeed, to rebut the adequacy of a presumptive lead plaintiff, proof is required, not the unsupported conjecture floated by the LPH Investor Group.

Accordingly, because they have the largest financial interest in the litigation and otherwise meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the presumptively most adequate plaintiff supporting appointment as Lead Plaintiff in the instant litigation is the Longwei Investor Group.

**ARGUMENT**

**THE LONGWEI GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

1. **The Longwei Investor Group Has the Largest Financial Interest**

Courts have considered four factors in determining the "largest financial interest" for purposes of a Lead Plaintiff motion in securities litigation pursuant to the PSLRA: "(i) the number of shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate losses suffered during the class period." *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5, *17-*18 (N.D. Ill. Aug. 11, 1997) (the "*Lax-Olsten*" factors).

Here, the Longwei Investor Group, without question, has the largest financial interest in the action of any competing movant under the *Lax-Olsten* factors. The Longwei Investor Group purchased a total of 548,700 shares during the Class Period, at a cost of $1,248,134. The Longwei Investor Group still held 398,700 of their shares after the end of the Class Period, and has total losses of approximately $773,018.15. In addition, the Longwei Investor Group retained almost 400,000 shares, exceeding the amount of retained shares of all the other competing movants combined by over 130,000 shares. Indeed, compared to the LPH Investor Group, which retained only 27,362 shares, the Longwei Investor Group clearly has the greater financial interest and overall incentive to prosecute the claims of the Class and procure a recovery on its behalf.[3]

---

[3] *See Quan v. Advanced Battery Tech., Inc.*, No. 11 Civ. 2279 (CM), 2011 U.S. Dist. LEXIS 102723, at *6-7 (S.D.N.Y. Sept. 9, 2011); *Schueneman v. Arena Pharma., Inc.,* No. 10 cv 1959 BTM (BLM), 2011 U.S. Dist. LEXIS 87373, at *14 (C.D. Cal. Aug. 8, 2011) ("The Court adopts the retained share methodology, which looks to the number of retained shares at the end of the period."); *Applestein v. Medivation Inc.*, No. C 10-0098 MHP, 2010 U.S. Dist. LEXIS 98255, at *6 (N.D. Cal. Sept. 20, 2010) ("When calculating the greatest financial interest, the court utilizes the retained share methodology, which primarily looks to shares brought during the class period that are retained at the end of the class period."); *In re Comverse Tech. Inc. Sec. Litig*., No. 06 Civ. 1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at

Moreover, the Longwei Investor Group member Excalibur has the largest individual loss of any of the competing movants, further strengthening the Longwei Investor Group's position as presumptive Lead Plaintiff. *See Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d, 348, 356 (S.D.N.Y. 2011) (appointing a group as Lead Plaintiff where two of its members "have the largest and second-largest individual losses of any of the competing movants."); *In re Charles Schwab Sec. Litig.*, 2008 WL 2635495, at *3 (N.D. Cal. July 3, 2008) (appointing a group as Lead Plaintiff where an individual member had the largest financial interest that exceeded the combined losses of another group.).

In a desperate attempt to refute this reality, the LPH Investor Group propounds a "LIFO" methodology purporting to demonstrate that movant Excalibur had a gain of over $781,075.95, thereby eviscerating Movants purported losses. However, as discussed in more detail above, the LPH group only accomplishes this curious feat by wholly misapplying LIFO and failing to match Excalibur's first 502,273 sales with any purchases. Such a blatant manipulation is squarely contrary to the basic principle of LIFO – that "a sale is matched to the most recent purchase of shares (occurring prior to the sale)." Kotz Decl. ¶ 13.[4] Here, the LPH Investor Group simply abandons LIFO and fails to match such sales at all. Applying LIFO methodology correctly, the Longwei Investors Group's losses total $773,018.15 are more than any other competing movant.

Accordingly, the Longwei Investor Group has the largest group losses and Excalibur has the largest individual losses and, therefore, should be appointed Lead Plaintiff for the purported Class.

---

*13 (E.D.N.Y. Mar. 2, 2007) (appointing a group lead plaintiff because it "had the greatest number of relevant net shares purchased, net funds expended, and suffered the greatest loss").

[4] *See Commonwealth Chemical Sec., Inc.*, 1976 U.S. Dist. LEXIS 12998, at *3.

**2. Excalibur is Not Subject to Unique Defenses or Class Conflicts**

In another futile attempt to discredit the presumptive Lead Plaintiff, the LPH Investor Group claims that Excalibur cannot serve as Lead Plaintiff because Longwei's counsel, Varnavides, represented it in another action well over a year ago. The LPH Investor Group, however, offers no explanation, legal precedent or ethical rule as to why counsel's prior relationship should disqualify Excalibur from appointment as Lead Plaintiff, other than to speculate that Varnavides is somehow privy to Excalibur's "inner workings" which would make him inadequate. ECF No. 35, at 10. It is clear, however, that "speculation does not satisfy an objector's burden in overcoming the presumption established by the PSLRA." *Smilovits v. First Solar, Inc.*, No. CV12-0555, 2012 WL 3002513 at \*5 (D. Ariz. July 23, 2012), citing *In re Regions Morgan Keegan Closed-End Fund Litig.*, 2010 WL 5173851 at \*6 (W.D. Tenn. Dec. 15, 2010) ("The statute's language requires an objector to present 'proof' of these deficiencies, emphasizing that speculative defects are not enough to defeat the presumption.").

Although defendants have not proffered any more than mere speculation of a possible "conflict," Excalibur has submitted a declaration signed by the President of its General Partner, William Hechter, explaining that Varnavides had formerly represented Excalibur in a completely unrelated lawsuit that "was terminated on February 14, 2012." *See* Exhibit B., Declaration of William Hechter in Further Support of the Longwei Investor Group's Motion for Appointment as Lead Plaintiff and For the Selection of Lead Counsel, ¶ 2. Since the termination of that lawsuit, neither Excalibur nor Mr. Hechter has had any contact with either Varnavides or his law firm, Sichenzia Ross, regarding that or any other matter – including the instant action. *Id.* ¶ 2. In addition, Excalibur and Mr. Hechter are committed to vigorously prosecuting the instant action on behalf of the Class and obtaining the maximum recovery possible. *Id.* ¶ 3.

Accordingly, Excalibur, which has suffered the largest losses of any of the individual movants who have submitted motions for appointment as Lead Plaintiff, is not subject to any unique defenses or conflicts. The issues raised by the LPH Investor Group present no actual or implied conflict for Excalibur. Thus, because it is clear that the Longwei Investor Group is the "most adequate plaintiff" and the LPH Investor Group has not offered any *proof* to rebut this presumption, *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), the Longwei Investor Group should be appointed Lead Plaintiff.

### 3. The Longwei Investor Group is a Proper Group

The Longwei Investor Group constitutes a proper group under the PSLRA. The PSLRA explicitly permits a "group of persons" to serve as Lead Plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also McDermott Int'l, Inc. Sec. Litig*., No 08 Civ. 9943, 2009 U.S. Dist. LEXIS 21539, at *7-8 (S.D.N.Y. Mar. 6, 2009).

Indeed, the appointment of Excalibur would also meet one of the primary legislative goals in enacting the PSLRA – namely, to encourage sophisticated institutional investors with large financial holdings to serve as Lead Plaintiffs in securities class actions. H.R. CONF. REP. 104-369, 1995 U.S.C.C.A.N. 730, 1995 WL 709276, AT *34 (Leg. Hist.) (Nov. 28, 1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representations in securities class actions.").

The LPH Investor Group, in another attempt to discredit the presumptive Lead Plaintiff, points to the fact that movant Todd Okimoto signed his Certification with the Rosen law firm, as opposed to its proposed Lead Counsel, Pomerantz Grossman Hufford Dahlstrom & Gross LLP ("Pomerantz"). It is unclear though why this would disqualify Okimoto. The record evidences

that after consultation with the Rosen Law Firm, Okimoto opted to seek Lead Plaintiff status as part of the Longwei Investor Group, selecting Pomerantz to serve as Lead Counsel.

Further evidencing the fact that he intended to join the Longwei Investor Group as a Lead Plaintiff and move for the selection of Pomerantz as Lead Counsel, is the fact that prior to submitting his Motion, Okimoto signed a declaration attesting to the fact that he intended to joined a group of two other plaintiffs who are actively working together to protecting the interests of the class, and that he wished Pomerantz to serve as Lead Counsel. *See* Joint Declaration of Excalibur, Lagermeier and Okimoto attached as Exhibit D to Memorandum of Law in Support, ECF No. 22 ("Joint Decl."). As such, there has not been a scintilla of evidence proffered to support a lack of cohesiveness by or among the Longwei Investor Group.

Indeed, the Joint Declaration executed by each of the Longwei Investor Group members demonstrates that each member is knowledgeable about this litigation, actively working with the other members of the group, and committed to protecting the interests of the entire Class. *See* Joint Decl. ¶ 7. Accordingly, the Court can rest assured that the Longwei Investor Group has the cohesiveness and willingness to prosecute the claims of the Class to judgment.

## CONCLUSION

For the foregoing reasons, Longwei Investor Group respectfully requests the Court to issue an Order: (1) consolidating the related actions; (2) appointing Longwei Investor Group as Lead Plaintiff for the Class; (3) approving the Pomerantz firm as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated:   April 1, 2013
            New York, New York

          Respectfully submitted,

          **POMERANTZ GROSSMAN HUFFORD**
          **DAHLSTROM & GROSS LLP**

          *s/ Jeremy A. Lieberman*              .
          Marc I. Gross
          Jeremy A. Lieberman
          Lesley F. Portnoy
          600 Third Avenue
          New York, New York 10017
          Telephone:  (212) 661-1100
          Facsimile:  (212) 661-8665

          **POMERANTZ GROSSMAN HUFFORD**
          **DAHLSTROM & GROSS LLP**
          Patrick V. Dahlstrom
          10 South La Salle Street, Suite 3505
          Chicago, Illinois 60603
          Telephone:  (312) 877-1181
          Facsimile:  (312) 877-1184

          *Counsel for the Plaintiffs and*
          *Proposed Lead Counsel for the Class*

          **THE ROSEN LAW FIRM P.A.**
          Laurence Rosen
          Phillip Kim
          275 Madison Avenue, 34th Floor
          New York, New York 10016
          Telephone: (212) 686-1060
          Facsimile:  (212) 202-3827

          *Counsel for Plaintiffs*