UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS BASNETT, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>LONGWEI PETROLEUM INVESTMENT HOLDING LIMITED, CAI YOUNGJUN, JAMES CRANE and MICHAEL TOUPS,<br><br>      Defendants. | Civil Action No. 1:13-cv-00214-HB |
| JUN MA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>      Plaintiff,<br><br>  v.<br><br>LONGWEI PETROLEUM INVESTMENT HOLDING LIMITED, YOUNGJUN CAI, JAMES CRANE, AND MICHAEL TOUPS,<br><br>      Defendants. | Civil Action No. 1:13-cv-00229-HB |

(caption continued on subsequent page)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE LPH INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

| | |
|---|---|
| CHARLIE MUNIZ, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>LONGWEI PETROLEUM INVESTMENT HOLDING LTD., YONGJUN CAI, MICHAEL TOUPS, and JAMES CRANE,<br><br>      Defendants. | Civil Action No. 1:13-cv-00278-HB |
| PAUL HOWARD, On Behalf of Himself and All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>LONGWEI PETROLEUM INVESTMENT HOLDING LIMITED, CAI YONJUN, MICHAEL TOUPS and JAMES CRANE,<br><br>      Defendants. | Civil Action No. 1:13-cv-00422-HB |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I. THE LPH INVESTOR GROUP HAS THE LARGEST FINANCIAL INTEREST AND SHOULD BE APPOINTED LEAD PLAINTIFF ........................................................ 3

II. THE LONGWEI INVESTOR GROUP IS FATALLY FLAWED ..................................... 6

III. EXCALIBUR IS INDIVIDUALLY UNSUITABLE TO REPRESENT THE CLASS .................................................................................................................................. 9

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Applestein v. Medivation Inc.*,
 No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 17, 2010)...................5

*Beckman v. Ener1, Inc.*,
 11 Civ. 5794 (PAC), 2012 U.S. Dist. LEXIS 19972 (S.D.N.Y. Feb. 15, 2012)........................7

*Bo Young Cha v. Kinross Gold Corp.*,
 12 Civ. 1203 (PAE), 2012 U.S. Dist. LEXIS 79288 (S.D.N.Y. May 31, 2012) .......................4

*In re CMED Sec. Litig.*,
 11 Civ. 9297 (KBF), 2012 U.S. Dist. LEXIS 47785 (S.D.N.Y. Apr. 2, 2012).........................7

*Freudenberg v. E*Trade Fin. Corp.*,
 07 Civ. 8538, 2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. July 16, 2008) ..............................8, 9

*In re Gentiva Sec. Litig.*,
 281 F.R.D. 108 (E.D.N.Y. 2012).............................................................................................4

*In re Groupon Secs. Litig.*,
 No. 12 C 2450, 2012 U.S. Dist. LEXIS 123899 (N.D. Ill. Aug. 28, 2012)............................10

*Klimas v. Dep't of the Treasury*,
 122 F. App'x 355 (9th Cir. 2005) ............................................................................................1

*In re McDermott Int'l, Inc. Sec. Litig.*,
 No 08 Civ. 9943 (DC), 2009 U.S. Dist. LEXIS 21539 (S.D.N.Y. Mar. 6, 2009) ...............8, 10

*In re Orion Sec. Litig.*,
 No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) ....................1

*Perlmutter v. Intuitive Surgical, Inc.*,
 No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011).................5

*Police & Fire Ret. Sys. v. SafeNet, Inc.*,
 No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007).................4

*Reimer v. Ambac Fin. Group, Inc.*,
 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008).........................9

*Ruland v. InfoSonics Corp.*,
 Case No. 06cv1231 BTM, 2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) ...............5

*Schueneman v. Arena Pharm., Inc.*,
 No. 10cv1959 BTM (BLM), 2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011).............5

*In re Telxon Corp. Sec. Litig.*,
  67 F. Supp. 2d 803 (N.D. Ohio 1999) .............................................................................. 10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................ 8

*Zhu v. UCBH Holdings, Inc.*,
  682 F. Supp. 2d 1049 (N.D. Cal. 2010) ........................................................................... 10

**STATUTES**

15 U.S.C. § 78u-4 ................................................................................................... *passim*

Fed. R. Civ. P. 23 .................................................................................................... *passim*

The LPH Investor Group respectfully submits this reply memorandum of law in further support of its motion for appointment as Lead Plaintiff, and approval of Faruqi & Faruqi, LLP (the "Faruqi Firm") as its choice of Lead Counsel, and in further opposition to the Longwei Investor Group's competing motion.[1]

## PRELIMINARY STATEMENT

The LPH Investor Group's adequacy, typicality and ability to represent the Class are undisputed and unchallenged; and its **$770,154.94** in LIFO loss is approximately **$675,403.81 *greater*** than the $94,751.13 LIFO loss claimed by the Pritt and Piasta group.[2]  Yet the Longwei Investor Group maintains—without providing any authority or basis for its calculations—that it "clearly has the largest financial interest in these actions."  However, the Longwei Investor Group's calculations ignore the Class Period sales of the **502,273** Longwei shares that Excalibur held at the start of the Class Period.  As such, the LPH Investor Group has larger losses than the Longwei Investor Group (*a $770,154.94 LOSS* vs. *$509,237.82 GAIN*) when calculated using the LIFO methodology.

---

[1]  Capitalized terms not otherwise defined herein shall have the same meaning as those found in the Memorandum Of Law In Further Support Of The LPH Investor Group's Motion For Appointment As Lead Plaintiff And In Opposition To All Competing Motions ("LPH Opp. Br."), Dkt. No. 35.  All docket references are to *Basnett v. Longwei Petroleum Inv. Holding Ltd.*, No. 1:13-cv-00214-HB.  Unless otherwise noted, all emphasis is added and internal citations and quotations are omitted.

[2]  Any belated attempt to challenge the LPH Investor Group's typicality and adequacy is untimely and must be rejected.  *See, e.g.*, *Klimas v. Dep't of the Treasury*, 122 F. App'x 355, 357 (9th Cir. 2005) (refusing to consider "new arguments raised for the first time in [a] reply brief").  Moreover, movants Pritt and Piasta and William Tylutki did not oppose the motion to be appointed Lead Plaintiff filed by the LPH Investor Group.  *See In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *16–17 (S.D.N.Y. July 7, 2008) (concluding that failure to file an opposition resulted in the failure to rebut the most adequate plaintiff presumption).  Therefore, this reply memorandum deals primarily with the issues raised in the Memorandum Of Law In Further Support Of The Motion By The Longwei Investor Group For Consolidation Of Related Actions, Appointment As Lead Plaintiff And Approval Of Counsel (the "Longwei Investor Group Oppo. Br.").  *See* Dkt. No. 34.

Aware of the law in this District, the Longwei Investor Group switched gears in its opposition brief by attempting—for the first time in this litigation—to argue that the Court should adopt "retained shares" as a secondary methodology to calculate financial interest. The Longwei Investor Group's calculations are premised on an incorrect interpretation of the retained shares method, and artificially ends the Class Period on different dates in order to inflate the number of shares the Longwei Investor Group held at the end of the Class Period and reduce the number that the LPH Investor Group held.[3]  Calculated *equally*, the LPH Investor Group retained *484,390* shares at the end of the Class Period, exceeding the Longwei Investor Group by *85,690*.

Second, Longwei Investor Group is a group in name only and was obviously cobbled together by Pomerantz and the Rosen Firm in order to seize control of the litigation improperly. Since Excalibur, Lagermeier, and Okimoto failed to submit sufficient evidence of cohesion with their *opening* motion—which itself demonstrates a lack of cohesion, as Okimoto's PSLRA certification reveals that he chose the Rosen Firm to be his counsel yet he jointly requested Pomerantz as *sole* lead counsel for the group.  Thus, these three movants are not related or cohesive and are inadequate to represent the Class.

Excalibur also suffers from several unique defenses that render it atypical and inadequate to represent the Class.  Without addressing these fatal issues, the Longwei Investor Group argues that Excalibur's status as a sophisticated institutional investor trumps the LPH Investor Group's clearly larger financial interest, ignoring the plain statutory language of the PSLRA and clear

---

[3]   The class period in the *Basnett*, *Ma*, and *Howard* actions begins on May 17, 2010 and ends on January 3, 2013, while the class period in the *Muniz* action begins on October 13, 2009 and ends on January 2, 2013.  Aware that *all three* members of the LPH Investor Group sold substantial amounts of Longwei shares on January 3, 2013, the Longwei Investor Group utilized a class period ending on *January 3, 2013*, substantially discounting the retained shares figure attributable to the LPH Investor Group, while utilizing the January 2, 2013 for its members, in order to inflate its retained shares figure by including *330,000 shares* that were subsequently sold on January 3, 2013 by Excalibur (250,000 shares) and Okimoto (80,000 shares).

2

case law on the issue.  There is simply nothing in the PSLRA that even remotely suggests that a class member with the largest financial interest can be displaced by an institutional investor with a smaller interest (or in this case, *sizable gain*).  The Court should decline to do so here.

The LPH Investor Group is therefore the "most adequate plaintiff" under the PSLRA based on its financial interest and its showing that it satisfies Rule 23's typicality and adequacy requirements.  The LPH Investor Group respectfully requests the Court grant its Motion to be appointed Lead Plaintiff, and approve its selection of the Faruqi Firm as Lead Counsel.

### ARGUMENT

### I. THE LPH INVESTOR GROUP HAS THE LARGEST FINANCIAL INTEREST AND SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA mandates that the class member to be appointed lead plaintiff must be the "most adequate plaintiff" with "the largest financial interest in the relief sought" and must otherwise satisfy the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B).  The financial interest represented by the LPH Investor Group exceeds that of the Longwei Investor Group in *all* of the *Lax* Factors, and as demonstrated by the chart below, it is not even close.[4]  Indeed, utilizing the universally accepted LIFO methodology to determine the fourth—and most important—component, the Longwei Investor Group actually has a Class Period *gain*:

| MOVANT | TOTAL SHARES PURCHASED | NET SHARES PURCHASED | NET FUNDS EXPENDED | LIFO LOSSES |
|---|---|---|---|---|
| LPH INVESTOR GROUP | 843,927 | 27,362 | $787,239.78 | ($770,154.95) |
| LONGWEI INVESTOR GROUP | 548,700 | (433,573) (Net Shares Sold) | ($466,341.54) (Net Proceeds) | $509,237.82 ***GAIN*** |

*See* Dkt. No. 36-5, Ex. E (chart providing *Lax* Factors for all remaining movants).

---

[4]   The chart assumes ***the same*** Class Period ***for each movant***—October 13, 2009 through January 3, 2013.

Realizing that its chances of being appointed Lead Plaintiff are significantly lower if the Court joins the overwhelming majority of courts that have adopted the LIFO methodology, the Longwei Investor Group instead seemingly argues, *without any authority*, that its total losses are approximately $793,320 (conceivable only under FIFO, but the group's methodology remains unclear).[5] However, the FIFO methodology has been routinely rejected by courts in this District and around the country because it inappropriately inflates a movant's purported losses by ignoring sales occurring during the class period and significantly exaggerating losses when those sales are matched against pre-class period holdings. *See* LPH Opp. Br., at 6–8. Thus, LIFO is the appropriate methodology for calculating a lead plaintiff movant's financial losses, particularly where, as here, one of the movants held pre-class period shares. *See id.*; *see also Bo Young Cha v. Kinross Gold Corp.*, 12 Civ. 1203 (PAE), 2012 U.S. Dist. LEXIS 79288, at *13 (S.D.N.Y. May 31, 2012) ("The Court agrees . . . LIFO is a superior methodology, particularly where, as here, one or more of the proposed lead plaintiffs, as of the start of the class period, already held stock in the security at issue.").[6]

---

[5] The Longwei Investor Group lists $793,320 as its total losses in its opposition brief. *See* Longwei Investor Group Oppo. Br., at 2. However, based on the LPH Investor Group's independent analysis and calculation, the Longwei Investor Group's proper FIFO loss is ***$773,018.15***. *See* Gonnello Decl., Ex. A.

[6] Assuming *arguendo* that the Court gives any weight to the FIFO methodology, the difference between the Longwei Investor Group's FIFO losses ($773,018.15) and the LPH Investor Group's FIFO loss ($770,154.94) is trivial ($2,863.21). *See, e.g.*, *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 118 (E.D.N.Y. 2012) (finding $32,671.82 to not be a "substantial difference" between financial interests); *Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959, at *6 (S.D.N.Y. Feb. 21, 2007) (finding a $40,000 difference between $1.78 million and $1.82 million—a 2% difference—not to be outcome determinative). Thus, given that the FIFO difference between the two movants (***less than 0.4%***) is immaterial, and the significant advantage the LPH Investor Group has over the Longwei Investor Group in ***every other*** *Lax* Factor, the LPH Investor Group clearly has the largest financial interest in the Actions.

4

Detecting, correctly, that it would lose the FIFO argument, the Longwei Investor Group attempts to confuse the issue and—for the first time in this litigation—propose the retained share methodology as a basis for calculating its losses.  In so doing, the Longwei Investor Group asks this Court to ignore economic reality and strictly look at the number of shares held on a certain date (not even the end of the Class Period) to determine financial interest.  This argument makes little sense and blatantly misapprehends the law.

The retained share method examines "the number of shares purchased during the class period that are retained at the end of the class period."  *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *21 (N.D. Cal. Feb. 15, 2011).  However, despite the Longwei Investor Group's confused attempt to demonstrate otherwise, the retained share method ***does not ignore*** Class Period sales generating massive gains.  *See Ruland v. InfoSonics Corp.*, Case No. 06cv1231 BTM (WMc), 2006 U.S. Dist. LEXIS 79144, at *16, n.1 (S.D. Cal. Oct. 23, 2006) (applying the retained share method, the court concluded that "[h]ad [movant] purchased stock before the class period and sold it for a profit during the class period, such windfall gains would be deducted from [movant]'s losses.").[7]

In this case, it is uncontroverted that Excalibur ***sold 902,273*** shares of Longwei stock from its portfolio during the Class Period, and yet only purchased 400,000 during the Class Period.  *See* Dkt. No. 22-3, Ex. C.  Longwei Investor Group's attempt to avail itself of the

---

[7]    In fact, the Longwei Investor Group's ***own authorities*** recognize the need to offset gains from the sale of stock during the class period under the retained share method.  *See, e.g.*, *Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *8 (N.D. Cal. Sept. 17, 2010) (reducing movant's net losses where movant received proceeds "from selling the shares" during the class period).  Moreover, *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM (BLM), 2011 U.S. Dist. LEXIS 87373, at *15 (S.D. Cal. Aug. 8, 2011) is inapposite and does not change the LPH Investor Group's superior financial interest.  The court in *Schueneman* merely appointed as lead plaintiff the investor that had a larger financial interest in the first three *Lax* Factors, despite the losing movant's slightly larger estimated loss under the retained share method.  *See* 2011 U.S. Dist. LEXIS 87373, at *15.

retained share method is nothing more than legal sleight-of-hand aimed at ignoring the obvious economic reality that Excalibur—and the Longwei Investor Group—sold *502,273 shares* from Excalibur's pre-Class Period holdings during the Class Period for a *substantial gain*. *See* Dkt. No. 22-3, Ex. C (indicating Excalibur's pre-Class Period holdings of *502,273* shares).

The Longwei Investor Group's retained share calculations are also incorrect as a factual matter. The Longwei Investor group artificially ended the class period on January 2, 2013 for the Longwei Investor Group, inflating its retained shares figure by including *330,000 shares* that were subsequently sold on January 3, 2013 by Excalibur (250,000 shares) and Okimoto (80,000 shares). Had the Longwei Investor Group utilized the same January 2, 2013 date to end the Class Period for the LPH Investor Group, it would be obvious that the LPH Investor Group retained *484,390* shares at the end of the Class Period, *85,690 more* shares than the Longwei Investor Group. *See* Dkt. No. 20-4, Ex. D (indicating Love sold 76,963 shares on January 3, 2013; indicating Lupis sold 273,365 shares on January 3, 2013; indicating Wilson sold 106,700 shares on January 3, 2013). Thus, an apples-to-apples comparison clearly reveals that the LPH Investor Group retained more shares than the Longwei Investor Group at the end of the modified-January 2, 2013 class period.[8]

## II. THE LONGWEI INVESTOR GROUP IS FATALLY FLAWED

As explained in the LPH Investor Group's prior briefing, Excalibur, Lagermeier, and Okimoto are ineligible to serve as Lead Plaintiff in the Actions because the "group" members

---

[8] In fact, the Longwei Investor Group even acknowledged that each LPH Investor Group member sold shares on January 3, 2013, which the Longwei Investor Group purports to be after the Class Period, and yet intentionally omitted those shares from its retained share calculation. *See* Longwei Investor Group Oppo. Br., at 2, n.1 ("Movants Love, Lupis and Wilson used the sales price for *sales occurring after the Class Period* in calculating purported losses."). Because Love, Lupis, and Wilson only sold shares on January 3, 2013, with no subsequent sales, the Longwei Investor Group clearly is aware of these purported "post-class period" sales.

have been cobbled together by their counsel, Pomerantz and the Rosen Firm, in a transparent attempt to aggregate their financial interest in order to claim the largest financial interest.  *See* LPH Opp. Br., at 12–16.  The Longwei Investor Group failed to explain ***how***, ***when***, or ***why*** the respective members were combined in the first instance, and has yet to set forth any evidence demonstrating that the group members had ***any*** relationship pre-dating the Actions or whether the three members have ever ***directly communicated***.  *See, e.g.*, *Beckman v. Ener1, Inc.*, 11 Civ. 5794 (PAC), 2012 U.S. Dist. LEXIS 19972, at *11–12 (S.D.N.Y. Feb. 15, 2012) (noting the purported group was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff").

The Longwei Investor Group's attempt to cast the aggregation of losses by unrelated investors as the "majority view" presents the relevant case law in a manner well beyond the permissible bounds of reasonable interpretation.  *See* Longwei Investor Group Oppo. Br., at 6, n.2.  As explained in the LPH Investor Group's prior briefing, the view most consistent with the PSLRA is a bright line rule preventing unrelated groups from being appointed lead plaintiff.  *See* LPH Opp. Br., at 12–13.  But for recent district courts in this District, "[t]he prevailing position is that unrelated investors ***may*** join together, with review 'on a case-by-case basis,' [only] 'if such a grouping would best serve the class,'" and provided that the proposed lead plaintiff group has made "***an evidentiary showing***" that its members "will be able to function cohesively and to effectively manage the litigation ***apart from their lawyers***."  *In re CMED Sec. Litig.*, 11 Civ. 9297 (KBF), 2012 U.S. Dist. LEXIS 47785, at *7 (S.D.N.Y. Apr. 2, 2012) (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)).

Thus, where the proposed group members have failed "to provide the Court with ***any evidence*** that its members have had any ***prior pertinent relationships*** or cooperative efforts, or that they will act collectively and separately from their lawyers," as they have failed to do here,

7

"[t]he Court *need not* delve into the various case-by-case analyses that courts have employed when evaluating whether a proposed group of unrelated investors is suitable for appointment as lead plaintiffs." *Varghese*, 589 F. Supp. 2d at 392–93.  As such, the actual "majority view" demonstrates that "courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action." *Varghese*, 589 F. Supp. 2d at 392 (citing *In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 7972, 2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) (rejecting group applications that provided no evidentiary basis for aggregation); *Goldberger v. PXRE Group, Ltd.*, No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925, at *13–14 (S.D.N.Y. Mar. 30, 2007) (rejecting proposed group that "shares only this lawsuit in common"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401–02 (S.D.N.Y. 2006) ("Nothing before this Court indicates that these random cumulations of plaintiffs are anything more than an effort to achieve the highest possible 'financial interest' figure to be chosen"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (same)).[9]

---

[9] In fact, the cases that the Longwei Investor Group cites are in accord.  For example, in *In re McDermott Int'l, Inc. Sec. Litig.*, No 08 Civ. 9943 (DC), 2009 U.S. Dist. LEXIS 21539, at *11–12 (S.D.N.Y. Mar. 6, 2009), the court appointed a family comprised of three individual investors, specifically noting that "[t]he members of the Adams Family *are not* 'unrelated investors' grouped together by their lawyers for purposes of aggregating their losses and obtaining appointment as lead plaintiff."  The Longwei Investor Group's attempt to selectively quote *Freudenberg v. E*Trade Fin. Corp.*, 07 Civ. 8538, 2008 U.S. Dist. LEXIS 62767, at *11–12 (S.D.N.Y. July 16, 2008) is similarly unavailing.  The court in that case ultimately appointed a three-member group with "a longstanding pre-litigation relationship and a clear understanding as to consultation, information sharing, and management of the litigation," specifically noting that "[a] group consisting of persons with a pre-litigation relationship is more likely to be

For all the reasons stated above and those in the LPH Investor Group's prior briefing, see LPH Opp. Br., at 12–16, the group's attempt to aggregate its members' losses should be rejected.

## III.    EXCALIBUR IS INDIVIDUALLY UNSUITABLE TO REPRESENT THE CLASS

As explained in the LPH Investor Group's prior briefing, see LPH Opp. Br., at 16–18, Excalibur also suffers from several unique defenses that render it atypical and inadequate to represent the Class.  As a threshold matter, because Excalibur was a ***net seller and net gainer*** during the Class Period, as it is uncontested that Excalibur ***sold 902,273*** shares of Longwei stock from its portfolio during the Class Period, and yet only ***purchased 400,000*** shares during the Class Period.  *See* Dkt. No. 22-3, Ex. C.  Excalibur also spent $895,000 on purchasing Longwei shares during the Class Period, yet received $1,676,076 in proceeds from Class Period sales of those shares, resulting in a net gain of ***$781,076.00*** from those transactions.  *See id.* Moreover, Excalibur's relationship with Gary Varnavides, Esq. of Sichenzia Ross Friedman Ference LLP, presents a serious conflict given Mr. Varnavides' access to Excalibur's confidential information and its inner workings.  As such, Excalibur is not suitable to represent the Class.

 Excalibur's purported status as a "sophisticated institutional investor" does not alter the equation.  Under the PSLRA, the presumptive lead plaintiff is "the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb) (emphasis added).  Thus, Congress envisioned that the plaintiff with ***the largest loss*** would be presumptive lead plaintiff, regardless of whether the investor is an

---

appointed lead plaintiff, on the logic that a more cohesive group is more likely to function smoothly." *Id.* at *12.  Finally, the court in *Reimer v. Ambac Fin. Group, Inc.*, 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729, at *9–10 (S.D.N.Y. May 9, 2008) appointed a group of three U.S. pension funds which had "prior working relationships . . . hav[ing] been involved in numerous prior securities class actions," and demonstrated clear evidence that the funds were capable of cooperating separately and apart from their lawyers, including "joint conference calls to discuss the litigation and to formulate a strategy."  The evidence of cohesiveness provided in *Ambac* is a far cry from the "joint" declaration the Longwei Investor Group has submitted in this case.

individual or institution. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 821–22 (N.D. Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor . . . If that were the case, Congress would have simply provided that ***institutional investors*** are presumptively the most adequate plaintiffs, regardless of the size of financial loss") (emphasis in original).

Even if Excalibur is considered an institutional investor – which is far from clear based on the record – its mere status as an institutional investor cannot displace a cohesive group of individual investors with a substantially larger financial interest when appointing the lead plaintiff. *See In re Groupon Secs. Litig.*, No. 12 C 2450, 2012 U.S. Dist. LEXIS 123899, at *16 (N.D. Ill. Aug. 28, 2012) ("[A] plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest."); *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049 (N.D. Cal. 2010) (same).[10]

Accordingly, the Longwei Investor Group's motion for lead plaintiff should be denied.

## CONCLUSION

The LPH Investor Group respectfully requests that its Motion be granted in its entirety and that all other motions seeking appointment as lead plaintiff be denied.

---

[10] Notably, even a case cited by the Longwei Investor Group is in accord. *See In re McDermott Int'l, Inc.*, 2009 U.S. Dist. LEXIS 21539, at 17 ("It is true that, as institutional investors, Northumberland and the McDermott Institutional Investor Group are prototypical plaintiffs envisioned by Congress in the enactment of the PSLRA – sophisticated institutions with large financial interests that can supervise class counsel. This consideration is insufficient, however, to rebut the statutory presumption that the Adams Family can fairly and adequately protect the interests of the class.").

Dated:  April 1, 2013

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: <u>*/s/ Richard W. Gonnello*</u>
Richard W. Gonnello
Francis P. McConville
Steven Bentsianov
Megan Sullivan
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
E-mail: rgonnello@faruqilaw.com
           fmcconville@faruqilaw.com
           sbentsianov@faruqilaw.com
           msullivan@faruqilaw.com

*Attorneys for the LPH Investor Group and [Proposed] Lead Counsel for the Class*