UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
:
:
: C.A. No. 13 Civ. 214 (HB)
:
In re: LONGWEI PETROLEUM INVESTMENT :
HOLDING LIMITED SECURITIES : ECF CASE
LITIGATION :
:
: CLASS ACTION
:
-------------------------------------------------------------X
This Document Relates To:  All Actions :
-------------------------------------------------------------X

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
DOUGLAS COLE'S MOTION TO DISMISS THE CONSOLIDATED SECURITIES
CLASS ACTION COMPLAINT**

**FARUQI & FARUQI, LLP**
Richard W. Gonnello
Francis P. McConville
Megan M. Sullivan
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330

*Lead Counsel for Lead Plaintiffs Paul Love,
Fabio Benedetto Lupis, and Chris Wilson*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 4

LEGAL ARGUMENT .................................................................................................................. 6

I. STANDARDS.................................................................................................................. 6

II. THE CAC PROPERLY ALLEGES A SECTION 10(b) CLAIM AGAINST
COLE ............................................................................................................................... 6

    A. The CAC Alleges Cole Personally Made False Statements ................................... 7

    B. The CAC Alleges Cole Acted With The Requisite Scienter ................................. 8

    C. The CAC Properly Alleges Loss Causation............................................................ 11

III. THE CAC PROPERLY ALLEGES A CLAIM AGAINST COLE FOR
CONTROL PERSON LIABILITY UNDER SECTION 20(a) ........................................ 14

CONCLUSION............................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Alstom SA (Alstom IV)*,
  454 F. Supp. 2d 187 (S.D.N.Y. 2006) ................................................................................... 14

*In re Am. Int'l Grp., Inc.*,
  741 F. Supp. 2d 511 (S.D.N.Y. 2010) ..................................................................................... 9

*In re AOL Time Warner, Inc. Sec. Litig.*,
  503 F. Supp. 2d 666 (S.D.N.Y. 2007) ................................................................................... 11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ................................................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 2

*Chill v. GE*,
  101 F.3d 263 (2d Cir. 1996) ................................................................................................... 9

*In re CitiGroup Inc. Bond Litig.*,
  723 F. Supp. 2d 568 (S.D.N.Y. 2010) ..................................................................................... 8

*City of Roseville Employees' Ret. Sys., v. Energy Solutions, Inc.*,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................................ 7, 8

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................................ 7

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. N.Y. 2009) .......................................................................................... 9

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
  343 F.3d 189 (2d Cir. 2003) ........................................................................................... 11, 14

*In re Express Scripts, Inc.*,
  No. 04-cv-1009-HEA, 2010 U.S. Dist. LEXIS 65562 (E.D. Mo. June 30, 2010) ................. 13

*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ................................................................................... 10

*In re Gentiva Sec. Litig.*,
  No. 10-cv-5064(ADS)(WDW), 2013 U.S. Dist. LEXIS 134319
  (E.D.N.Y. Sept. 19, 2013) ............................................................................................... 11, 12

*Glaser v. The9, Ltd.*,
 772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................................9

*Green v. City of New York*, 05-CV-429 (SLT) (ETB),
 2010 U.S. Dist. LEXIS 2946 (E.D.N.Y. Jan. 7, 2010) ........................................................1

*Hall v. The Children's Place Retail Stores, Inc.*,
 580 F. Supp. 2d 212 (S.D.N.Y. 2008)................................................................................14

*Hoi Ming Michael Ho v. Duoyuan Global Water, Inc.*,
 887 F. Supp. 2d 547 (S.D.N.Y. 2012)................................................................................10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
 154 F. Supp. 2d 741 (S.D.N.Y. 2001)..................................................................................8

*In re Initial Pub. Offering Sec. Litig.*,
 383 F. Supp. 2d 566 (S.D.N.Y. 2005)..................................................................................6

*In re Initial Pub. Offering Secs. Litig.*,
 544 F. Supp. 2d 277 (S.D.N.Y. 2008)................................................................................12

*Janus Capital Group, Inc. v. First Derivative Traders*,
 131 S. Ct. 2296 (2011) (Cole Br. )..............................................................................1, 2, 7

*Kalnit v. Eichler*,
 264 F.3d 131 (2d Cir. 2001).................................................................................................9

*Katz v. Image Innovations Holdings, Inc.*,
 542 F. Supp. 2d 269 (S.D.N.Y. 2008)................................................................................14

*In re Livent, Inc. Noteholders Sec. Litig.*,
 151 F. Supp. 2d 371 (S.D.N.Y. 2001)................................................................................14

*In re Longtop Fin. Techs. Ltd. Secs. Litig.*,
 No. 11 Civ. 3658, 2013 U.S. Dist. LEXIS 50553 (S.D.N.Y. Apr. 8, 2013) .........................8

*McIntire v. China Mediaexpress Holdings, Inc.*,
 927 F. Supp. 2d 105 (S.D.N.Y. 2013).............................................................................9, 10

*Novak v. Kasaks*,
 216 F.3d 300 (2d Cir. 2000).................................................................................................6

*In re Omnicom Grp., Inc. Sec. Litig.*,
 597 F.3d 501 (2d Cir. 2010).........................................................................................11, 12

*In re Pfizer Secs. Litig.*,
 No. 04 Civ. 9866 (LTS)(HBP), 2012 U.S. Dist. LEXIS 39454
 (S.D.N.Y. Mar. 22, 2012) ....................................................................................................7

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001) .................................................................................................. 6

*In re Scottish Re Group Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007) ................................................................................ 11

*In re Smith Barney Transfer Agent Litig.*,
   884 F. Supp. 2d 152 (S.D.N.Y. 2012) .................................................................................. 7

*Squibb Co. Sec. Litig.*,
   586 F. Supp. 2d 148 (S.D.N.Y. 2008) ................................................................................ 14

*In re Stillwater Capital Partners Inc. Litig.*,
   No. 11-2275 (SAS), 2012 U.S. Dist. LEXIS 57515 (S.D.N.Y. April 23, 2012) ................... 7

*Van Dongen v. CNinsure Inc.*,
   No. 11 Civ. 7320 (VM), 2013 U.S. Dist. LEXIS 89534 (S.D.N.Y. June 24, 2013) ............ 10

*Varghese v. China Shenghuo Pharm. Holdings*,
   672 F. Supp. 2d 596 (S.D.N.Y. 2009) ............................................................................ 8, 10

*In re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011) ................................................................................ 12

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 6 .......................................................................................................................... 1

Fed. R. Civ. P. 9(b) ..................................................................................................................... 6

Fed. R. Civ. P. 15 ...................................................................................................................... 15

Individual Practices of Judge Harold Baer, Jr. Rule 5.I ............................................................. 1

Lead Plaintiffs Paul Love, Fabio Benedetto Lupis, and Chris Wilson (collectively, "Lead Plaintiffs" or "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendant Douglas Cole's ("Cole") Motion to Dismiss.[1]

**PRELIMINARY STATEMENT**

Defendant Cole, represented by the same counsel as Gerald DeCiccio, filed a motion to dismiss that is a virtual verbatim copy of the memorandum of law filed by Gerald DeCiccio in support of his motion to dismiss (the "DeCiccio Brief" or "DeCiccio Br.") (ECF No. 77), largely changing the name of the defendant and altering the one paragraph citation to the parties section of the CAC.[2]  Rather than burdening the Court with more duplication, Lead Plaintiffs incorporate

---

[1] This brief responds to the memorandum of law filed by Douglas Cole in support of his motion to dismiss (the "Cole Brief" or "Cole Br.") (ECF No. 101). On November 25, 2013, Cole filed his Reply Memorandum of Law in Support of Defendant Douglas Cole's Motion to Dismiss ("Cole Reply"), mistakenly claiming that this opposition brief was not timely filed as of November 22, 2013, leaving his motion to dismiss unopposed (ECF No. 113). This position is incorrect and should be disregarded. As the Cole Brief was served by the Court's CM/ECF system on November 1, 2013, pursuant to Fed. R. Civ. P. 6(d), Plaintiffs possessed *an additional three days* (*i.e.*, until November 25, 2013) to file this opposition pursuant to the Court's October 11, 2013 scheduling order (ECF No. 94). *See Green v. City of New York*, 05-CV-429 (SLT) (ETB), 2010 U.S. Dist. LEXIS 2946, at *11, n.1 (E.D.N.Y. Jan. 7, 2010) (explaining that under Fed. R. Civ. P. 6(d) when "a party … must act within a specified time after service and service is made under Rule 5(b)(2) … (E) …[*i.e.*, by 'electronic means'], 3 days are added after the period would otherwise expire") (internal quotation omitted). Moreover, even if Cole's timeliness argument were correct—which it is not—the Cole Reply was filed pre-maturely. According to Rule 5.I of Your Honor's Individual Rules of Practice, a movant must wait 48 hours before notifying the Court that an opposition has not been filed, which, in conjunction with Fed. R. Civ. P. 6(a)(2)(C), provides that the Cole Reply should have been filed on November 26, 2013, at the earliest. Having jumped the gun by filing a reply in violation of the Court's rules, Cole has accordingly waived the right to address Plaintiffs' arguments herein.

[2] Specifically, other than including a different description of the movant, the only differences are the Cole Brief (i) deleted one paragraph from the DeCiccio Brief which cursorily described the Audit Committee (DeCiccio Br. at 8); (ii) inserted one new argument consisting of two paragraphs, Section IV.B.1., arguing Cole was not the maker of statements contained in press releases based upon *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) (Cole Br. at 10-11), which was included verbatim in DeCiccio's Reply Memorandum at 3-4 (ECF No. 90); (footnote continues on next page…)

1

by reference the facts and arguments set forth in Lead Plaintiffs' Memorandum of Law in Opposition to Defendant Gerald Deciccio's Motion to Dismiss (the "DeCiccio Opposition Brief" or "DeCiccio Opp.") (ECF No. 82).  Therefore, this opposition will be limited to the facts and arguments unique to Defendant Cole.

Like DeCiccio, the centerpiece of Cole's argument is that the CAC[3] is based upon "an unsubstantiated report issued by *Geoinvesting.com*."  (Cole Br. at 1; DeCiccio Br. at 1.)  First, as detailed in both Plaintiffs' memorandum of law in opposition to the Auditor Defendants' motion to dismiss and the DeCiccio Opposition Brief, the CAC is not solely dependent upon the *GeoInvesting* Report, defined *infra*.  Rather the CAC provides substantial and detailed corroborating evidence, including: (i) facts reported and confirmed by state-run China Central Television (¶ 135); (ii) facts reported by Guangshou Li and Jiaxia Sun from the Daily Economy News (¶ 134); (iii) reports of proceedings from the local Safety Inspection Bureau (¶ 134); (iv) interviews with Taiyuan City SAT Collection Management Office (¶ 136); (v) interviews with local residents (¶¶ 136, 137); (vi) interviews with Longwei employees (¶ 138); and (vii) photographs taken by Plaintiffs' investigators (¶ 139).

Perhaps the most compelling substantiation of the *GeoInvesting* Report, however, comes from Defendant Cole himself.  Cole served as a Longwei director and Audit Committee member for nearly three years.  (¶ 30.)  During that three year term, Cole represented that he reviewed

---

(ii) inserted one new citation to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to argue "Plaintiffs' assertion that the Geoinvesting Report was evidence of any false statements is not 'plausible on its face,'" (Cole Br. at 12); (iv) added two new sentences regarding Cole's relationship with RedChip (Cole Br. at 16); and (v) corrected one typographical error, changing "please loss causation" (DeCiccio Br. at 20) to "plead loss causation" (Cole Br. at 20).

[3]   All references herein to the "CAC" or "¶_" are to the Consolidated Securities Class Action Complaint filed on July 8, 2013 (ECF No. 47).  All emphases are added and all internal citations and quotation marks are omitted unless otherwise indicated.  Capitalized terms, unless otherwise defined, have the same meanings as those used in the CAC.

2

and approved both the audited financial statements and Longwei's reports on internal controls and recommended they be included in the Company's annual reports on Form 10-K, and in fact signed the 2010, 2011, and 2012 annual reports on Form 10-K and the February 2011 Form S-3/A, which included the false and misleading financial statements alleged in the CAC.  (¶¶ 43, 78, 88, 97, 113.)  Nevertheless, when *GeoInvesting* released its report entitled "*Longwei Petroleum: The Most Brazen China-Based U.S. Listed RTO To Date*" (the "*GeoInvesting* Report" or the "Report"), Cole himself found the Report so compelling that RedChip Companies, Inc. ("RedChip"), Longwei's paid investor relations firm—***of which Cole was Managing Director at the time***—immediately withdrew its endorsement of the Company and terminated its contract with the Company.  (¶¶ 12, 30.)  Moreover, Cole was so convinced by the *GeoInvesting* Report that, as a member of the Audit Committee, he demanded an independent investigation of the facts set forth in the now purportedly "unsubstantiated" *GeoInvesting* Report.  (¶¶ 15, 146.)  Indeed, Cole was so distrustful of the Longwei's counsel and auditors, that when the Company refused to allow the Audit Committee to retain independent counsel and forensic auditors to conduct such an investigation, Cole resigned from the Board and the Audit Committee.  (¶¶ 15, 146.)

      Finally, and equally compelling, the Company itself initially vehemently denied the facts reported in the *GeoInvesting* Report and went so far as to file a complaint against *GeoInvesting*, asserting claims for defamation *inter alia*.  (*See* Declaration Of Richard W. Gonnello In Support Of Lead Plaintiffs' Memorandum In Opposition To Sichenzia Ross Friedman Ference LLP's Motion To Withdraw As Counsel For Longwei Petroleum Investment Holding Limited, Ex. E (ECF No. 62)).  Longwei, however, has now abandoned its complaint against *GeoInvesting* (*Id.*, Ex. F) and, despite an earlier appearance in this action, has failed to take any steps to defend

3

itself against the detailed factual assertions of both the *GeoInvesting* Report and the CAC, and as a result has had a default entered against it herein.  (*See* ECF No. 99.)

## STATEMENT OF FACTS[4]

Contrary to the argument in Cole's Brief, the CAC provides substantial factual detail regarding his role in the fraud at Longwei, and notably his reaction once the fraud was revealed. Specifically, the CAC alleges Cole has extensive financial experience, including prior service as a chief accounting officer for a publicly traded company and service as a board and audit committee member for another Chinese reverse merger ("CRM") company named China Chemical Corp. ("China Chemical").  (¶¶ 30, 212, 213.)  Moreover, during the Class Period, Cole was named Managing Director of RedChip, Longwei's paid marketing and investor relations firm, for which it received 1.9 million shares of Longwei stock for the first six months of services.  (¶¶ 4, 30.)  To assist Longwei in marketing and investor relations, RedChip, *inter alia*, hosted Longwei presentations at numerous investor conferences, published interviews, created promotional videos, and had its purportedly independent research division ("RedChip Research") publicly endorse Longwei's prospects.  (¶¶ 4, 12, 19, 90, 91.)  Not only did RedChip serve in this capacity for Longwei, but also for China Chemical.  (¶ 30.)  Cole argues that these allegations regarding RedChip are irrelevant because Cole was only appointed Managing Director of RedChip late in the Class Period.  (Cole Br. at 16.)  This argument, however, ignores (i) Cole's longstanding relationship with RedChip through China Chemical (¶ 30); (ii) the relationship between Dong, Cole, and RedChip (¶¶ 30, 31); and (iii) most importantly,

---

[4]   To avoid repetition, Plaintiffs incorporate by reference the "Statement of Facts" from Lead Plaintiffs' Memorandum of Law in Opposition to Defendants Child, Van Wagoner & Bradshaw, PLLC, Anderson Bradshaw, PLLC, and Russell Anderson's Motion to Dismiss (ECF No. 79), Section II at 4-10, Lead Plaintiffs' Memorandum of Law in Opposition to Defendant Michael Toups' Motion to Dismiss (ECF No. 80), Section II at 3-8, and the DeCiccio Opposition Brief at 2-8.

RedChip's reaction to the release of the *GeoInvesting* Report, at a time when RedChip employed two members of Longwei's Audit Committee, one a RedChip vice president and the other a Managing Director (¶¶ 12, 30, 31).

With this background, on March 22, 2010, Defendants Cai Yongjun ("Cai") and Xue Yongping ("Xue"), as the only members of the Board, Chief Executive Officer and Chief Financial Officer respectively, and majority shareholders of Longwei, hand-picked and appointed Cole to serve as a purportedly "independent" director, and member of the Board's Audit, Compensation, and Nominating Committees.  (¶¶ 7, 52, 206, 212.)  Neither the Board nor the Audit Committee, however, ever held a single meeting during the entire history of the Company.  (¶¶ 9, 206, 212.)   Nevertheless, as an Audit Committee member, throughout the Class Period, Cole repeatedly (i) represented he had reviewed the audited annual financial statements with management and the "independent" auditors (¶ 44); (ii) represented he had reviewed the annual reports on Form 10-K and quarterly reports on Form 10-Q prior to their filing (¶ 44); (iii) represented he had, not less than annually, reviewed the Company's system of internal controls (¶ 44); (iv) recommended that the audited financial reports be included in the annual reports on Form 10-K filed with the SEC; and (v) signed the 2010, 2011, and 2012 annual reports on Form 10-K and the February 2011 Form S-3/A, which included the false and misleading financial statements alleged in the CAC (¶¶ 44, 78, 88, 97, 113).

As set forth above, the very same day the *GeoInvesting* Report was published revealing what it termed "*The Most Brazen China-Based U.S. Listed RTO To Date*," RedChip Research suspended its investment rating and price target on Longwei, announced its previous investment rating could not be relied upon, and terminated its contract with Longwei.  (¶ 12.)  Moreover, Cole, as a member of the Audit Committee, demanded an independent investigation of the facts

5

set forth in the now purportedly "unsubstantiated" *GeoInvesting* Report.  (¶¶ 15, 146.)  When the Company refused to allow the Audit Committee to retain independent counsel and forensic auditors to conduct such an investigation, Cole resigned from the Board and the Audit Committee.  (¶¶ 15, 146.)

## LEGAL ARGUMENT

I.   STANDARDS

The standards applicable to this motion have been addressed in detail in Plaintiffs' oppositions to other defendants' motions to dismiss.  Rather than repeat prior arguments, Plaintiffs will only emphasize, that even under the PSLRA, 15 U.S.C. § 78u-4, *et seq.*, and Fed. R. Civ. P. 9(b), the task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof," as Cole has asked this Court to do.  *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005), *aff'd sub nom.*, *Tenney v. Credit Suisse First Boston Corp.*, No. 05-3430-CV, 2006 U.S. App. LEXIS 13050 (2d  Cir. May 19, 2006) (quoting *Levitt v. Bear Stearns & Co., Inc.*, 340 F.3d 94, 101 (2d Cir. 2003)).  Thus, Plaintiffs are not required to plead "detailed evidentiary matter," *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001), but simply sufficient facts "to support a belief" that defendants' statements were materially false or misleading."  *Novak v. Kasaks*, 216 F.3d 300, 314 n.1 (2d Cir. 2000).  The CAC more than satisfies these standards with regards to Cole.

II.   THE CAC PROPERLY ALLEGES A SECTION 10(b) CLAIM AGAINST COLE

To state a claim for violation of Section 10(b) and Rule 10b-5, a plaintiff must plead "(1) a material misrepresentation (or omission) . . . ; (2) scienter, i.e., a wrongful state of mind . . . ; (3) a connection with the purchase or sale of a security . . . ; (4) reliance . . . ; (5) economic loss . . . ; and (6) loss causation[.]"  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-

6

42 (2005). Cole has only challenged the CAC's allegations with respect to three of these elements: the issuance of misstatements or omissions of material fact, scienter, and loss causation. (Cole Br. at 10-19.) Contrary to Cole's arguments, as set forth below, the CAC properly alleges each element of a claim for violation of Section 10(b).

### A. The CAC Alleges Cole Personally Made False Statements

Just as in the DeCiccio Brief, Cole attempts to deflect attention from the 2010, 2011, and 2012 annual reports on Form 10-K, along with the February 2011 Form S-3/A, which **Cole signed** (¶¶ 78, 88, 97, 113) by a lengthy discussion of press releases. As discussed in more detail in Section I.B.1 of the DeCiccio Opposition Brief, it is axiomatic that the signer of a document is deemed to be the "maker" of the statements contained therein. *See*, *e.g.*, *In re Stillwater Capital Partners Inc. Litig.*, No. 11-2275 (SAS), 2012 U.S. Dist. LEXIS 57515, at *25 (S.D.N.Y. April 23, 2012) (concluding that, by signing SEC filings, defendant "made the alleged misstatements"). Cole argues that in some fashion under *Janus*, 131 S. Ct. 2296 (2011) he is not the maker of any statements alleged in the CAC. The *Stillwater* Court, however, explained that *Janus* does not apply to SEC filings signed by the named defendant. As *Stillwater* held: "[Cole] signed 'each of the key SEC filings implicated in the Complaint' and the proxy statement itself. *Janus*, which involved two separate entities and whether statements of one could be attributed to the other, cannot be used to shield [Cole], who signed the documents at issue and thereby 'made' the alleged misstatements." *Stillwater*, 2012 U.S. Dist. LEXIS 57515, at *25.[5] The CAC seeks

---

[5] *See also In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 164 (S.D.N.Y. 2012); *In re Pfizer Secs. Litig.*, No. 04 Civ. 9866 (LTS)(HBP), 2012 U.S. Dist. LEXIS 39454, at *20 n.3 (S.D.N.Y. Mar. 22, 2012) ("The PAC also alleges that Defendant McKinnell signed Pfizer's public filings, and so adequately alleges his liability, under *Janus*, for misrepresentations in those filings."); *City of Roseville Employees' Ret. Sys., v. Energy Solutions, Inc.*, 814 F. Supp. 2d 395, 417 (S.D.N.Y. 2011) ("There is no dispute that ES and each of the Individual Defendants who signed the Registration Statements 'made' the statements under *Janus*"); (footnote continues on next page…)

to hold Cole primarily liable only for those documents he signed, not the press releases he belabors.

Again, as detailed in Section I.B.1 of the DeCiccio Opposition Brief, the CAC further alleges in great detail why the 2010, 2011, and 2012 annual reports on Form 10-K, and the February 2011 Form S-3/A were false and misleading.  (*See* ¶¶ 79, 89, 98, 114.)  In sum, by signing these SEC filings Cole became primarily liable for the false and misleading representations they contained, including: (i) the misreported financial information (*e.g.*, revenues, net income, earnings), *see Varghese v. China Shenghuo Pharm. Holdings*, 672 F. Supp. 2d 596, 606 (S.D.N.Y. 2009); (ii) the misrepresentations that the financial statements were prepared in accordance with GAAP, *see In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 594 (S.D.N.Y. 2010); and (iii) the misrepresentations regarding the Company's internal controls, *see Varghese*, 672 F. Supp. 2d at 606.

### B. The CAC Alleges Cole Acted With The Requisite Scienter

Just like DeCiccio, with regards to scienter Cole once again attempts to deflect the Court's attention from the detailed allegations of the CAC by arguing Cole had no "motive" to commit securities fraud.  (Cole Br. at 16-17.)  Motive, however, is not required to plead scienter under the federal securities laws.  *See In re Longtop Fin. Techs. Ltd. Secs. Litig.*, No. 11 Civ. 3658, 2013 U.S. Dist. LEXIS 50553, at *33-36 (S.D.N.Y. Apr. 8, 2013).  Instead, a plaintiff properly alleges scienter "***either*** (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior ***or recklessness***."  *Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001).  The Second Circuit has identified at least four circumstances may give rise to a

---

*In re Indep. Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d 741, 767 (S.D.N.Y. 2001) (holding that false financial statements recited in a document filed with the SEC are attributable to the corporate officers that are signatories to that document).

8

strong inference of the requisite scienter "where the complaint sufficiently alleges that the defendants (1) benefitted in a concrete and personal way from the fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. N.Y. 2009); *see also Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 586-88 (S.D.N.Y. 2011); *In re Am. Int'l Grp., Inc.*, 741 F. Supp. 2d 511, 532 (S.D.N.Y. 2010).  In other words, "[a]n egregious refusal to see the obvious, or to investigate the doubtful [can support] an inference of . . . recklessness."  *Chill v. GE*, 101 F.3d 263, 269 (2d Cir. 1996).

Next, like DeCiccio, Cole asks the Court to consider each allegation of recklessness in isolation.  The Supreme Court, however, "has instructed courts to view scienter under the PSLRA 'holistically' and deny a motion to dismiss if the inference of scienter advanced by plaintiffs is 'at least as compelling as any opposing inference one could draw from the facts alleged.'"  *McIntire v. China Mediaexpress Holdings, Inc.*, 927 F. Supp. 2d 105, 126 (S.D.N.Y. 2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1324 (2011)).

As detailed in Section I.B.2. of the DeCiccio Opposition Brief, the CAC provides more than sufficient factual detail to raise a strong inference that Cole, just like DeCiccio, acted with the requisite "conscious disregard or recklessness that is at least as compelling as any opposing non-fraudulent inference."  *China Mediaexpress Holdings, Inc.*, 927 F. Supp. 2d at 127. Specifically, Cole ignored express warnings as early as the end of the 2011 fiscal year that Longwei's internal controls were significantly deficient (¶¶ 99, 197) which raise an inference of scienter.  *See, e.g., Varghese*, 672 F. Supp. at 608.  Cole further ignored copious red flags (¶ 222), any one of which would have been sufficient to put Cole on notice to "investigate the

9

doubtful," but when viewed in the aggregate were so obvious that the only reasonable and plausible conclusion is "an egregious refusal to see the obvious," which strongly supports Cole's scienter.  *Varghese*, 672 F. Supp. 2d at 609-10; *see also China Mediaexpress Holdings, Inc.*, 927 F. Supp. 2d at 127-28.  Furthermore, the magnitude of the fraud in this case—**overstatement of revenue by a factor of not less than 623**—is another factor that weighs in favor of finding a strong inference of scienter.  *See, e.g.*, *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 199 (S.D.N.Y. 2010) (listing cases).

Cole's abrupt resignation, as well as RedChip's immediate termination of its relationship with Longwei following the issuance of the *GeoInvesting* Report further support a strong inference of scienter.  Courts within this District have held that resignations of key individuals in the wake of such a report both bolsters the credibility of the report and also supports a strong inference of scienter.  *See, e.g., China Mediaexpress Holdings, Inc.*, 927 F. Supp. 2d at 127; *Hoi Ming Michael Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012); *Van Dongen v. CNinsure Inc.*, No. 11 Civ. 7320 (VM), 2013 U.S. Dist. LEXIS 89534, at *41-43 (S.D.N.Y. June 24, 2013).

Cole argues that the allegations pertaining to RedChip are irrelevant to the analysis of scienter, since they pre-date his appointment as RedChip's Managing Director.  (Cole Br. at 16.)  In fact, however, the CAC alleges that RedChip assisted Longwei in marketing its securities for over 6 years, for which it was paid millions of dollars.  Then, while Cole *simultaneously* served as RedChip's Managing Director and Longwei's Audit Committee Chairman, the very same day the *GeoInvesting* Report was published, without any further investigation by RedChip or Cole, RedChip withdrew its previous endorsement of Longwei and immediately terminated its contract with the Company.  (¶ 12.)  Then, just two weeks later, Cole resigned from the Board and the

Audit Committee when the Company refused to authorize an independent investigation of the facts set forth in the Report. (¶¶ 15, 146.) In light of the magnitude of the fraud and the well pled allegations that Cole ignored express warnings of deficient internal controls (¶¶ 99, 197) as well as numerous red-flags (¶ 222), RedChip's and Cole's haste to disassociate themselves with Longwei supports an inference that Cole either had knowledge of, or consciously disregarded, the longstanding fraud at the Company. *See In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 394 n.176 (S.D.N.Y. 2007) ("resignations . . . , although not sufficient in and of themselves, add to the overall pleading of circumstantial evidence of fraud").

        C.        **The CAC Properly Alleges Loss Causation**

To establish loss causation Plaintiff need only allege a "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). The Second Circuit has established two methods of pleading this causal link: the "corrective disclosure" theory and the "materialization of concealed risk" theory. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010). To satisfy the corrective disclosure theory, a plaintiff needs to plead that "the market reacted negatively to a corrective disclosure, which revealed an alleged misstatement's falsity, or disclosed that allegedly material information had been omitted." *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 677 (S.D.N.Y. 2007). Like DeCiccio, Cole's sole argument against the CAC's allegations of loss causation is that the truth regarding Longwei's financial fraud was published by *GeoInvesting*, a third party. It is well recognized, however, that corrective disclosure of facts by third parties such as analysts and journalists, followed by a share price decline may establish loss causation. *In re Gentiva Sec. Litig.*, No. 10-cv-5064(ADS)(WDW), 2013 U.S. Dist. LEXIS 134319, at *16-20 (E.D.N.Y. Sept. 19, 2013) (Wall Street Journal report of Senate Finance Committee investigation sufficient to prove loss

11

causation). Furthermore, "[t]here is no requirement that corrective disclosures emanate from the company itself, so long as the truth is disclosed in some fashion. Moreover, there is no requirement that the disclosure take a particular form or be of a particular quality." *In re Initial Pub. Offering Secs. Litig.*, 544 F. Supp. 2d 277, 289 (S.D.N.Y. 2008).

To establish the materialization of the concealed risk theory, a plaintiff need only make a factual showing that "the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *In re Omnicom*, 597 F.3d at 513. Most commonly, the materialization of the risk theory for the evaluation of loss causation occurs where "a concealed risk . . . comes to light in a series of revealing events that negatively affect stock price over time." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 555 (S.D.N.Y. 2011). "Unlike corrective disclosures, these events do not identify prior company statements as misleading, but they must reveal new information previously concealed and fall within the 'zone of risk' concealed so that the events were foreseeable consequences of the fraud." *Id.*

Whether evaluated under the corrective disclosure theory or the materialization of the risk theory, the allegations of the CAC are more than sufficient to establish loss causation. On January 3, 2013, *GeoInvesting* published the Report which revealed to investors for the first time that Longwei's prior financial statements concealed the fact that the Company had overstated its revenues by a factor of at least 623, failed to disclose a related-party transaction and therefore its financial statements could not have been stated in accordance with GAAP. (¶¶ 10-11, 127.) The same day that Longwei's financial overstatements were first revealed in the *GeoInvesting* Report, Longwei's stock plummeted $1.66, or 72% in a single day, on massive trading volume of more than 14.5 million shares. (¶ 13.)

Cole's reliance upon *In re Express Scripts, Inc.*, No. 04-cv-1009-HEA, 2010 U.S. Dist. LEXIS 65562, at *48-50 (E.D. Mo. June 30, 2010), an out of circuit opinion that does not address Second Circuit precedent, is quite simply misplaced.  In *Express Scripts*, the plaintiff relied upon a complaint filed by the Attorney General ("AG") as the only basis to support its claim that defendants' statements "that the Company's new business model was successful and that the Company's interest were aligned with its clients" were false and misleading.  *Id*. at *49. The Missouri District Court found it notable that, other than the AG's complaint, "Plaintiffs fail to plead any facts that those statements were not true."  *Id*. at *50.  The Court further found it important that the company "continued to deny any allegation of misconduct" in the AG's action.  *Id*.  Unlike *Express Scripts*, in addition to the *GeoInvesting* Report, the CAC provides substantial additional corroborating evidence establishing the falsity of the financial statements included in the SEC filings signed by Cole, including: (i) facts reported and confirmed by state-run China Central Television (¶ 135); (ii) facts reported by Guangshou Li and Jiaxia Sun from the Daily Economy News (¶ 134); (iii) reports of proceedings from the Safety Bureau (¶ 134); (iv) interviews with Taiyuan City SAT Collection Management Office (¶ 136); (v) interviews with local residents (¶¶ 136, 137); (vi) interviews with Longwei employees (¶ 138); and (vii) photographs taken by Plaintiffs' investigators (¶ 139).  Perhaps even more important, unlike the company in *Express Scripts*, Longwei has abandoned all pretense of denying wrongdoing and has allowed a default to be entered against it in this action.

In short, the CAC alleges that the day the *GeoInvesting* Report was published revealing Defendants' overstatement of the Company's financial results and undisclosed investments, Longwei's stock plummeted $1.66, or 72% in a single day, on massive trading volume of more than 14.5 million shares.  (¶ 13.)  These allegations are more than sufficient to establish the

"causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff" necessary to plead loss causation. *Emergent Capital*, 343 F.3d at 197 (2d Cir. 2003).

### III. THE CAC PROPERLY ALLEGES A CLAIM AGAINST COLE FOR CONTROL PERSON LIABILITY UNDER SECTION 20(a)

In order to establish a prima facie case of liability under § 20(a), a plaintiff must show (1) "a primary violation by the controlled person"; (2) "control of the primary violator by the defendant"; and (3) that the controlling person "was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Since fraud is not an essential element of a Section 20(a) claim, Plaintiffs need not plead control with particularity. *See Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 170-71 (S.D.N.Y. 2008); *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 235 (S.D.N.Y. 2008). Instead, control may be pled in accordance with the notice pleading standard prescribed in Rule 8(a). *See In re Alstom SA (Alstom IV)*, 454 F. Supp. 2d 187, 210 (S.D.N.Y. 2006). "Whether a person is a 'controlling person' is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 276 (S.D.N.Y. 2008). Moreover, with respect to culpable participation, to withstand a motion to dismiss, a Section 20(a) claim need only allege particularized facts of the controlling person's conscious misbehavior or recklessness. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 414-17 (S.D.N.Y. 2001).

As detailed in the DeCiccio Opposition Brief, the CAC properly alleges each of the elements of a primary claim under Section 10(b) against Longwei. (DeCiccio Opp. at 22-23.) Likewise, by virtue of Cole's position as Director and Audit Committee member, and therefore necessary signatory to annual reports on Form 10-K, Cole possessed the ability to control the issuance of Longwei's annual reports which contained the misrepresentations and omissions

14

alleged in the CAC.  (*See* DeCiccio Opp. at 23-24.)  Finally, as detailed in Section II.C of the DeCiccio Opposition Brief, and Section III.B. *supra*, Cole was a culpable participant in the fraud.  Thus, the CAC properly states a claim against Cole for control person liability under Section 20(a).

## CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully submit that Cole's motion should be denied in its entirety.  If the Court grants any part of Cole's motion, Plaintiffs respectfully request leave to amend pursuant to Fed. R. Civ. P. 15.

Dated:  November 25, 2013

Respectfully submitted,

By: */s/ Richard W. Gonnello*

**FARUQI & FARUQI, LLP**
Richard W. Gonnello
Francis P. McConville
Megan M. Sullivan
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: rgonnello@faruqilaw.com
          fmcconville@faruqilaw.com
          msullivan@faruqilaw.com

*Lead Counsel for Lead Plaintiffs Paul Love, Fabio Benedetto Lupis, and Chris Wilson*