UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                        :

In re: LONGWEI PETROLEUM               :
INVESTMENT HOLDING LIMITED     :         13 CV 214 (HB)
SECURITIES LITIGATION                 :
                                                                       :         **OPINION & ORDER**
                                                                        :
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      This is a class action brought on behalf of investors who owned stock in Longwei Petroleum Investment Holding Ltd. between September 28, 2010 and January 3, 2013 for relief under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), j(b). Default judgments have already been entered against Longwei and its officer and board member Dora Dong. Further, the company's founders, Cai Yongjun and Xue Yongping, have failed to appear in this action. The remaining defendants, Michael Toups, Douglas Cole, and Gerald DeCiccio (the "individual defendants"); Child, Van Wagoner & Bradshaw, PLLC and Anderson Bradshaw, PLLC ( "the auditors"); and Russell Anderson, the principal audit partner throughout, have filed four separate motions to dismiss. All of the above defendants had been sued individually in prior actions, all of which have been consolidated. The motion to dismiss by the auditors and Russell Anderson is GRANTED with respect to the § 20(a) claim against Russell Anderson and DENIED with respect to all other claims. All other motions to dismiss are DENIED.

## BACKGROUND

      Longwei is a publicly traded distributor of petroleum products in China. From 2010 to 2012, over 91% of its reported revenues came from "the sale of gasoline and diesel fuel" from its three oil storage facilities in Shanxi province: Taiyuan, Gujiao, and Huajie. (Cons. Am. Compl. ("CAC") ¶ 58.) During this period, Longwei reported record revenues in sharp contrast to its competitors. (*Id.* ¶ 203.) For example, on September 28, 2010, the beginning of the class period,

Longwei filed a Form 10-K with the Securities and Exchange Commission (SEC) listing a 74% revenue increase. (*Id.* ¶ 76.) Plaintiffs allege that this and other company statements grossly overstated Longwei's oil sales since its facilities were "virtually idle." (*Id.* ¶ 128.)

Plaintiffs also claim that Longwei's financial filings inaccurately stated that the company held no material off-balance sheet arrangements and that its filings conformed to generally accepted accounting principles (GAAP). (*Id.* ¶¶ 78, 81, 83.) In fact, the company had invested $32 million in an unrelated tourism business partially owned by defendant Cai. (*Id.* ¶¶ 83.) This interest was disclosed to the Chinese State Administration for Industry & Commerce (SAIC) but not to the SEC. (*Id.* ¶¶ 143-44.) The company also reported drastically different revenues to the SAIC and SEC for part of 2012, claiming $428,764 in revenue from the Taiyuan facility from January to December 2012 in SAIC filings but the exponentially greater $269.9 million for the fiscal year ending June 30, 2012 in filings with the SEC. (*Id.* ¶¶ 59, 136.)

On January 3, 2013, the end of the class period, GeoInvesting.com published an expose claiming that Longwei's reported sales "were vastly exaggerated." (*Id.* ¶ 127.) Geoinvesting is a short-seller which also operates a website providing investment analysis to subscribers. GeoInvesting based its report on video surveillance of Longwei's three facilities between October and December of 2012, as well as on interviews with local, unnamed residents. (*Id.* ¶ 128-29.) It also published photographs of the railroad tracks ostensibly used to deliver fuel, which showed overgrowth and rust, suggesting that they had been "unused" for "quite some time." (*Id.* ¶ 132.) Geoinvesting concluded that the Gujiao facility had been "virtually idle" since at least 2011, and the Taiyuan facility for "a long time." (*Id.* ¶ 128.) It asserted that Longwei had overstated its sales from the Taiyuan and Gujiao facilities by a factor of 882 for the month of November 2012. (*Id.* ¶ 131.) Following this report, the company's share price dropped 72% in a single day. (*Id.* ¶ 13.)

After GeoInvesting's announcement, the Daily Economic News, a Chinese newspaper, published a report confirming that the Taiyuan and Gujiao facilities "were not functional at all" based on a failed inspection by the Safety Inspection Bureau of Shanxi Province in May 2012. (*Id.* ¶ 134.) In January 2013, the Chinese television station CCTV aired its own footage of unused railroad spurs at Taiyuan and Gujiao, with a local resident stating that the Gujuiao facility

had "ceased operations for several years." (*Id.* ¶ 135-36.) Plaintiffs' investigators independently corroborated these reports through similar interviews, photographs, and visits.

Plaintiffs allege that Toups, DeCiccio, Cole, and the auditors have committed securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)-5, 17 C.F.R. § 240.10b-5, and that Toups, DiCiccio, Cole, and Anderson are liable as control persons under § 20(a) Of the Securities Exchange Act, 15 U.S.C. § 78t(a).

The complaint alleges that the individual defendants supervised the company's financial reporting during the class period. Michael Toups was Longwei's chief financial officer (CFO). Gerald DeCiccio and Michael Cole were independent directors and members of the audit committee, and DeCiccio was also the chair and financial expert for the committee. Michael Toups and Douglas Cole signed all of the company's Forms 10-K from 2010 through 2012, and Gerald DeCiccio did so in 2010 and 2011. (*Id.* ¶¶ 78, 97, 117.) Toups also made statements on behalf of the company concerning its financial well-being. He was quoted in a September 2011 press release saying that Longwei "expect[ed] both of our existing facilities [at Taiyuan and Gujiao] to continue generating strong revenues." (*Id.* ¶ 95.)

Child VanWagoner & Bradshaw, PLLC ("CvWB") was Longwei's auditor from the beginning of the class period until August 1, 2012, when Anderson Bradshaw succeeded it but retained the same team of auditors. (*Id.* ¶¶ 34-35.) Both firms issued unqualified audit opinions and concluded that Longwei's SEC filings presented the company's financial position fairly and conformed to GAAP. (*Id.* ¶ 84, 103, 119.) Russell Anderson worked for both CvWB and Anderson & Bradshaw, and Plaintiffs identify him as the "principal audit partner and contact person for all Longwei audits" from at least February 15, 2011 forward. (*Id.* ¶ 37.)

## DISCUSSION

Defendants move to dismiss for failure to state a claim. When resolving a motion to dismiss, I must treat all facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kassner v. 2nd Avenue Delicatessen*, 496 F.3d 229, 237 (2d Cir. 2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must contain "enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of illegal" conduct. *Twombly*, 550 U.S. at 556.

### I.     Securities Fraud

To satisfy § 10(b), Plaintiffs must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 527 (S.D.N.Y. 2009). Plaintiffs adequately allege all elements of a § 10(b) violation for both the individual defendants and the auditors. Below, I will discuss only the elements challenged by the Defendants: misrepresentation, scienter, and loss causation.

### A.  Misrepresentation

To satisfy the heightened pleading requirements of Rule 9(b) Fed.R.Civ.P., Plaintiffs must "(1) specify the statements that…were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re PXRE Grp.,* 600 F. Supp. 2d at 524 (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)). In addition, the PSLRA requires that Plaintiffs "'specify' each misleading statement" and "set forth the facts 'on which [a] belief' that a statement is misleading was 'formed.'" *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(1)).

Toups, Deciccio, and Cole assert that any misstatements either are not attributable to them, or constitute mere puffery and are therefore not actionable. "Statements are…'puffery' when they are 'too general to cause a reasonable investor to rely upon them.'" *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009). However, Longwei's financial filings, signed by Toups, DeCiccio, and Cole, and filed with the SEC during the class period, satisfy this element. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 266 (S.D.N.Y. 2008). Consequently, I need not reach the question of whether or not Longwei's press releases qualify as additional statements by the individual defendants.

Further, Plaintiffs show that Longwei's facilities could not have generated the claimed revenues. This evidence includes interviews with local residents, photos of abandoned

transportation links, a failed safety inspection at Taiyuan, surveillance by GeoInvesting at the end of 2012, and discrepancies in revenues reported to the SEC and SAIC for the same operations during part of the class period. Taken together, these allegations are more than sufficient for Plaintiffs' claims to survive dismissal.

      Defendants argue that the Geoinvesting report and Plaintiffs' investigation should be discounted because they depend on anonymous interviews. Under the PSLRA "confidential sources must be 'described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 589 (S.D.N.Y. 2011) (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)). This standard is satisfied by information from residents living near Longwei's fuel storage. Who better to know whether fuel shipments were coming and going from the facilities? Furthermore, the interviews are consistent with pictures and surveillance footage of the disused facilities. Thus, "'independent…factual allegations' corroborate [the] confidential source[s'] statements." *Glaser*, 772 F. Supp. at 590 (quoting *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 493 n.10 (S.D.N.Y. 2004)).

      Defendants claim that Geoinvesting is unreliable because it is a known short-seller, and had an incentive to magnify Longwei's financial distress. But Plaintiffs do not rely solely on Geoinvesting, and courts in this district frequently accept allegations based on short-seller reports at this stage in a case. *McIntire v. China MediaExpress Holdings, Inc.,* 927 F. Supp. 2d 105, 124 (S.D.N.Y. 2013). "The reliability of the report is a question of fact" that cannot be decided on a motion to dismiss. *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 564 (S.D.N.Y. 2012) (internal citations omitted).

      Finally, Defendants argue that Plaintiffs cannot rely on investigations from the end of 2012 to allege that Longwei's facilities were abandoned at the time of its financial reporting months earlier. While the investigations undertaken by Plaintiffs and Geoinvesting do post-date the alleged misstatements, the evidence they uncovered suggests abandonment of Longwei's facilities prior to the statements. Other allegations too, such as Longwei's failed safety inspection and its inconsistent financial reporting, also directly describe the period before the statements.

**B. Scienter**

Under the PSLRA, to plead scienter Plaintiffs must "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." *In re PXRE Grp.*, 600 F. Supp. 2d at 527 (quoting 15 U.S.C. § 78u-4(b)(2)).  This inference must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent," such as the possibility that the defendant was merely duped by another. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007). "In the Second Circuit, '[t]he requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness.'" *Glaser*, 772 F. Supp. 2d at 586 (quoting *ECA*, 553 F.3d at 198).  In this case, Plaintiffs allege either conscious misbehavior or recklessness by each of the Defendants.

**i. Michael Toups**

Plaintiffs clearly allege scienter for CFO Michael Toups. Toups was responsible for Longwei's financial reporting and internal controls, and touted the company's "real time" electronic inventory monitoring, making it likely that he was aware of Longwei's true productivity during the class period. (CAC ¶ 202.) At the very least, his role in financial reporting should have alerted him to Longwei's sudden rise in revenues and history of inadequate financial controls. Toups also claims to have spent "considerable" time in Taiyuan, where he likely observed the inactivity of the nearby storage facility. (*Id*. at ¶ 209.) Given the allegedly massive scale of the fraud, obvious to even a casual observer of Longwei's facilities, the pleadings support an inference of Toups' scienter. *See Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 273 (S.D.N.Y. 2008) ("[T]he magnitude of the alleged fraud provides some additional circumstantial evidence of scienter.").

**ii. Gerald DeCiccio and Michael Cole**

Scienter is also established for DeCiccio and Cole, two of the company's three audit committee members. (CAC ¶¶ 206.) They both signed the company's 2011 Form 10-K, which included a statement that Longwei's "disclosure controls were not effective" due to "a material weakness identified in [its] financial reporting." (*Id*. ¶ 99.)  Despite these failures, however, neither the board nor the audit committee reported holding any meetings. (*Id*. ¶ 212.)  Plaintiffs

also allege that the auditors had a history of employment with other Chinese companies with accounting irregularities and failed to follow GAAP, yet the audit committee recommended their retention annually. (*Id.* ¶¶ 212, 221.) The alleged failure to take any action in response to acknowledged reporting failures supports a finding of scienter. *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 653 (S.D.N.Y. 2007) (while "[m]ere membership in a committee with oversight responsibilities" is not enough to establish scienter, "[a]llegations that an audit committee failed to take steps to prevent fraud may suffice"); *Varghese v. China Shenghuo Pharm. Holdings*, 672 F. Supp. 2d 596, 608 (S.D.N.Y. 2009) (knowledge of "weak internal controls" supports a finding of scienter). The Defendants claim that clean audit opinions obscured the company's problems, but these opinions did not excuse the individual defendants from their own responsibilities to monitor Longwei's internal controls.

In addition to the enormous size of the alleged fraud, which circumstantially supports a finding of scienter, Plaintiffs point to red flags that should have prompted further investigation. "[S]cienter may be found where there are 'specific allegations of various reasonably available facts, or 'red flags,' that should have put the officers on notice' that the public statements were false." *Refco*, 503 F. Supp. 2d at 649 (quoting *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774-75 (S.D.N.Y. 2006)). Longwei's remarkable success in comparison to its competitors, its history of inadequate reporting, and its sudden increase in revenues in 2010, just in time to satisfy the terms of an escrow agreement that risked the personal stock of Longwei's founders, were a few such indicators. Considering Plaintiffs' allegations as a whole, they have pled sufficient facts to establish the scienter of Cole and DeCiccio.

### iii. The Auditors

Plaintiffs successfully allege the scienter of the auditors by pleading a combination of "red flags" that should have raised the auditors' suspicion, the enormous scale of the fraud, the auditors' failure to follow generally accepted auditing standards (GAAS), and the fact that they had been rebuked for audit deficiencies in the past by the Public Company Accounting Oversight Board (PCAOB). Failing to follow GAAS standards alone would not establish recklessness, but a combination of inadequate procedures and ignoring red flags is sufficient. *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 572-74 (S.D.N.Y. 2011) aff'd, 482 F. App'x

618 (2d Cir. 2012). Both factors are present here and are enough to establish a strong inference that the auditors behaved recklessly.

The auditors object and contend that they were unaware of the claimed red flags, and "an unseen red flag cannot be heeded." *Id.* at 573. But where "the 'red flags' would be clearly evident to any auditor performing its duties" it is reasonable to infer that the auditor "must have noticed the 'red flags,' but deliberately chose to disregard them." *In re Philip Serv. Corp. Sec. Litig.*, 383 F.Supp.2d 463, 475 (S.D.N.Y.2004) (citations omitted). At a minimum, it is fair to assume that the auditors reviewed Longwei's financial statements. Therefore the auditors must have been aware of Longwei's record revenues, their sudden upward trajectory, and the undisclosed tourism investment. These data points alone should have prompted further investigation. If the auditors visited the company, as Toups stated and as GAAS requires, they would have witnessed the inactivity first hand. (CAC ¶¶ 178, 218.)

### C. Loss Causation

The Defendants argue that the GeoInvesting report released on January 3, 2012 caused the steep decline in Longwei's stock price on that day, not any alleged misstatements released by the company over the course of the prior three years. This argument fails. "[A] plaintiff must allege ... that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001). If the Plaintiffs' allegations are taken as true, then the gap between Longwei's falsified financial position and its true performance was certainly responsible for the Plaintiffs' losses. Defendants imply that GeoInvesting's revelations were in fact untrue, but such a claim cannot be evaluated on a motion to dismiss.

### D. Section 20(a) Control Person Liability

Plaintiffs assert secondary liability for the individual defendants and Russell Anderson as control persons under § 20(a).  To succeed, they must show "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation." *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 244 (S.D.N.Y. 2006)

(quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir.1998)). Plaintiffs have adequately pled § 10(b) violations satisfying the first prong.

### 1. Toups, Cole, and DeCiccio

Given that Plaintiffs have pled the scienter necessary for primary violations by Toups, Cole, and DeCiccio, their culpability has also been sufficiently established. *See In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 494 (S.D.N.Y. 2006). Liability now turns on their control. "To survive dismissal, '[a] complaint must allege facts from which it can be inferred that the defendant had actual power or influence over the controlled person.'" *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 405 (S.D.N.Y 2007) (quoting *Rich v. Maidstone Fin., Inc.*, No 98 Civ. 2569, 2002 WL 31867724, at *11 (S.D.N.Y. Dec. 20, 2002)). These facts "need not be pleaded with particularity." *In re Parmalat Securities Litigation*, 414 F. Supp. 2d 428, 440 (S.D.N.Y. 2006). Toups, DeCiccio, and Cole all had responsibility for overseeing Longwei's auditing and financial reporting. Furthermore, all three signed Longwei's Form 10-K statements, which alone is sufficient evidence of control. *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (signing of financial statements containing misstatements is sufficient to plead control). Therefore, Plaintiffs successfully plead control person liability for the individual defendants.

### 2. Russell Anderson

However, Plaintiffs do not adequately plead control person liability for Russell Anderson. The allegations must support an "individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability" and cannot simply present legal conclusions. *Boguslavsky*, 159 F.3d at 720. Here, the complaint does little more than identify Anderson's title, and certainly falls short of the particularity required to allege culpable participation. Culpability "must be pled with the same particularity as scienter under section 10(b)." *Lapin*, 506 F. Supp. 2d at 246. In other words, "a section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness." *Kalin*, 526 F. Supp. 2d at 406. But the complaint contains only boilerplate allegations that "[t]he Individual Defendants and Anderson knew or recklessly disregarded the

9

fact that Longwei's representations were materially false and misleading and/or omitted material facts when made." (CAC ¶ 259). While the complaint contains additional narrative about the individual defendants, Plaintiffs plead no particularized facts about Anderson's knowledge of the fraud or his state of mind. This falls far short of the PSLRA's heightened pleading requirements.

## CONCLUSION

For the reasons stated above, the motion to dismiss by the auditors and Russell Anderson is GRANTED with respect to the § 20(a) claim against Russell Anderson and DENIED with respect to all other claims. All other motions to dismiss are DENIED in their entirety. The Clerk of the Court is instructed to close all four motions.

**SO ORDERED.**

Date: 1/27/14
New York, New York

**HAROLD BAER, JR.**
**United States District Judge**

10